Morris Weinfeld, J.
The defendant here is charged with the violation of subdivision a of section C19-90.0 of the Administrative Code of the City of New York in that he “ did unlawfully store and use propane gas at a pressure exceeding six (6) pounds to the square inch in the vicinity of Bastchester Boad and Haswell Street, City and County of Bronx, without a permit from the Fire Commissioner.’’
On this motion of defendant to dismiss the information, the facts are undisputed.
It is conceded that defendant’s allegedly culpable acts or conduct took place on property belonging to the State of New York, and that defendant was acting for his employer, Depot *925 Construction Corp., in the construction of a building of the Bronx State Hospital for the New York State Department of Mental Hygiene. The propane gas was designed for use in the construction, and no claim is asserted that its use was improper or hazardous. The position of the prosecution is that despite State ownership of the site, and of the building under construction, the City of New York nevertheless may validly require its permit as a prerequisite to the storage or use of the propane gas, by reason of the statute referred to.
The pivotal issue here is whether the city permit requirement is rendered inapplicable by reason of State statutory law, and specifically, section 6 of the Public Buildings Law, the last paragraph of which has received the careful consideration of the court.
Of course, the State is the sovereign; not the municipality. If the prohibition of section 6 is applicable, the inquiry is terminated, and the information must be dismissed.
Much has been written in the area of State-local relations. In its famous report of 1955, the Commission on Intergovernmental Relations, in the most comprehensive study of intergovernmental relations ever made, wrote (p. 55): “ The exercise of energetic and imaginative State leadership to carry decentralization as far as it can properly go need not result in an enlargement of the body of State law affecting local government. In fact, reliance on detailed legal limitations, controls, and prescriptions could be supplanted by emphasis on more flexible administrative supervision, consultation, cooperation and technical assistance. There are in different States enough varied examples of this approach to State-local relations to serve as precedents for a full-scale program of State leadership and guidance. Some States give invaluable help to local fiscal officers. Others promote local planning, zoning, and community development. Still others furnish particularly useful assistance in functional fields. The State of Tennessee through its Municipal Technical Advisory Service has pioneered an exceptionally broad program to help municipal officials. More and more States are raising levels of performance by extensive in-service training programs for local officials, usually conducted by the State university.
“ The States can strengthen local government by concerted efforts to find or create the right areas of local government, equip them with the powers they need, and maintain an appropriate balance of supervision and leadership. Efforts along these lines will go a long way toward meeting the problem of too many local governments, but not enough local government.”
*926 Enough has been quoted from the findings of this distinguished commission to illustrate the fundamental legal concept and incontestable tenet here applicable — the States govern the municipalities, and unless the law clearly provides otherwise, municipalities may not encroach directly or indirectly on the sovereign powers of the State.
There is express provision in the New York Constitution for the conferment by our State Legislature of legislative powers upon municipalities. (Art. IX, §§ 11,12.) However, local laws may not be inconsistent with the State Constitution, or State laws. (Art. IX, § 12.) The subordinate body may legislate respecting matters of local concern. (Matter of Green Point Sav. Bank v. Board of Zoning Appeals, 281 N. Y. 534; People ex rel. Luyster v. Cocks, 172 App. Div. 737.)
However, there does not appear to be any legal or practical area of local concern for the reason that section 6 of the Public Buildings Law expressly charges the Superintendent of Public Works with the duty to supervise the construction of the building here under discussion. “ The property, safety and health of the inhabitants of the City of New York are not under the Home Buie Law city responsibilities only, but are also those of the State.” (People v. Del Gardo, 1 Misc 2d 821, 826; People v. Blue Ribbon Ice Cream Co., 1 Misc 2d 453.)
This court construes the various provisions of section 6 of the Public Buildings Law as detailing various prohibitions against municipal action or interference with plans or specifications for the erection of State buildings, and, inter alia, requiring any person, firm or corporation to obtain any permit from such municipality, department or person as a condition of doing such work. Any other interpretation or construction would do violence to the intent of the Legislature and settled law in the field of State-municipal relations.
■ The motion to dismiss the information is granted.