Town of Islip et al., Appellants-Respondents, v Mario M. Cuomo, as Governor of the State of New York, et al., Respondents-Appellants.

Second Department, May 15, 1989

## APPEARANCES OF COUNSEL

*Meyer, Suozzi, English & Klein, P. C. (Jeffrey G. Stark* and *Michael A. Ciaffa* of counsel), for appellants-respondents.

*Robert Abrams, Attorney-General (Stuart Miller* and *Ezra I. Bialik* of counsel), for respondents-appellants.

## OPINION OF THE COURT

BRACKEN, J.

In an order and judgment (one paper) dated July 7, 1987, the Supreme Court, Suffolk County, declared that certain provisions of ECL 27-0704 are unconstitutional; however, other provisions of that law were upheld. The plaintiffs appeal from so much of the order and judgment as upheld provisions of that statute, and the defendants cross-appeal from so much of the order and judgment as declared ECL 27-0704 (2) to be unconstitutional.

I

The instant action was commenced in April 1984. In September 1984 the Supreme Court, Suffolk County, declared ECL 27-0704 unconstitutional, holding its enactment to be violative of NY Constitution, article IX, § 2 (b) (2). On direct appeal to the Court of Appeals *(see,* CPLR 5601 [b] [2]), that judgment was reversed, and partial summary judgment was granted to the defendants *(see, Matter of Town of Islip v Cuomo,* 64 NY2d 50).

The complaint has now been amended so as to assert 13 separate causes of action. The constitutionality of ECL 27-0704 is again challenged, but on grounds different from those addressed in *Matter of Town of Islip v Cuomo (supra).* Upon the plaintiffs' motion for partial summary judgment, the Supreme Court, Suffolk County, in the order and judgment appealed from, declared that ECL 27-0704 (2) is unconstitutional insofar as it empowers the Commissioner of the New York Department of Environmental Conservation (hereinafter

the DEC) to make changes in the scope of the "deep flow recharge area" *(see,* ECL 27-0704 [1] [b]). The defendants' notice of cross appeal is limited to this provision of the order and judgment. The court also declared that ECL 27-0704 (4) (a) is not violative of NY Constitution, article III, § 1, and that ECL 27-0704 is not violative of NY Constitution, article III, § 16, and the plaintiffs' notice of appeal is limited to those provisions of the order and judgment.

## II

The plaintiffs argue that ECL 27-0704, to the extent that it incorporates the Long Island Comprehensive Waste Treatment Management Plan of 1978, violates NY Constitution, article III, § 16 which states as follows: "No act shall be passed which shall provide that any existing law, or any part thereof, shall be made or deemed a part of said act, or which shall enact that any existing law, or part thereof, shall be applicable, except by inserting it in such act".

ECL 27-0704 (3) places significant limitations on the ability of local governments to build new landfills, or to expand existing landfills, within any geographic area designated as "a deep flow recharge area". This term is defined in ECL 27-0704 (1) (b) as follows: "A 'deep flow recharge area' shall mean a sensitive recharge area within the counties of Nassau and Suffolk within the boundaries of hydrogeologic zones I, II and III as defined in the Long Island Comprehensive Waste Treatment Management Plan of nineteen hundred seventy-eight". ECL 27-0704 (1) (f) and (2) further provide:

"f. 'Long Island Comprehensive Waste Treatment Management Plan of nineteen hundred seventy-eight' shall mean the study prepared by the Long Island Regional Planning Board pursuant to section two hundred eight of the federal water pollution control act. * * *

"2. The Long Island Comprehensive Waste Treatment Management Plan of nineteen hundred seventy-eight shall be kept on file in the office of the commissioner. The hydrogeologic zones and their attendant boundaries as specified in the aforementioned plan are hereby adopted. Any changes made in the boundaries and accepted by the commissioner shall be considered as automatically adopted for the purposes of this section".

▮ The plaintiffs contend that the Long Island Comprehensive Waste Treatment Management Plan of 1978, enacted

pursuant to Federal Water Pollution Control Act § 208 *(see,* 33 USC § 1288), and referred to by the parties as the 208 Plan, was, at the time of the enactment of ECL 27-0704, an "existing law" which, pursuant to the terms of NY Constitution, article III, § 16, could not be "made or deemed part of" that statute. The basic flaw in this argument is that the 208 Plan cannot be characterized properly as a "law"; rather, it is a scientific study which contains certain geological data, including that which is most relevant to this case, i.e., a map delineating certain hydrogeologic zones.

It is therefore apparent that the terms of NY Constitution, article III, § 16, construed literally, do not apply *(see, People v Halpern,* 79 Misc 2d 790, 794 [holding that an industrial code, which was not a "law", could properly be incorporated by reference into statute]). ECL 27-0704 does not incorporate a preexisting "law", and thus does not violate NY Constitution, article III, § 16, unless, by "liberal" judicial interpretation its scope were expanded beyond the limits to which, by the clear and unambiguous definition of its terms, it is confined. A review of the relevant precedent indicates that far from indulging in such a "liberal" interpretation, the courts have exhibited a pragmatic and relatively restrictive approach in applying this provision to particular cases. Only those statutes which violate both the letter and the spirit of this constitutional provision have been invalidated; ECL 27-0704 violates neither.

It has been held that the major purpose of the constitutional requirement that a statute contain an explicit recitation of its terms, rather than an indirect expression of them through the incorporation of another law, is to assist all persons concerned—such as the lawmakers themselves or those to be affected by the law—to easily and readily comprehend what the law actually means *(see, People ex rel. Everson v Lorillard,* 135 NY 285; *People ex rel. Board of Commrs. v Banks,* 67 NY 568; *North Shore Child Guidance Assn. v Incorporated Vil. of E. Hills,* 110 AD2d 826, 829). The need to refer to extrinsic documents in order to discover the meaning of a statute was evidently thought by the drafters of this provision of our State Constitution to be an undesirable burden upon those persons interested in knowing precisely what a particular law provides. This burden is considerably lessened, however, when the particular statute in question, like the one now under review, not only refers to another docu-

ment, but expressly states where that document may be found *(see,* ECL 27-0704 [2]).

A more compelling justification for the constitutional prohibition against statutory incorporation by reference is that certain practical difficulties in determining the content of the law may result when a statute which has been incorporated into another law is amended without a corresponding amendment in the law into which the incorporation was made. This is a particularly valid concern when the incorporation is accomplished by reference to a particular statute's numerical designation, and that designation is later changed as part of a recodification. These concerns are likewise inapplicable in this case.

While the scope of the hydrogeologic zones may be changed by administrative action, it is difficult to foresee how such a change would lead to a result inconsistent with the Legislature's intent in enacting ECL 27-0704, or how such a change would cause any uncertainty regarding the actual scope of the law. There is no evidence in the record that the hydrogeologic zones as delineated in the 208 Plan have ever undergone revision. Whether the automatic incorporation of a revised 208 Plan into ECL 27-0704 would violate NY Constitution, article III, § 16, is essentially an academic question *(see, People v Mobil Oil Corp.,* 101 Misc 2d 882; *cf., People v Shore Realty Corp.,* 127 Misc 2d 419).

Perhaps the best example of an application of NY Constitution, article III, § 16 which resulted in the nullification of a legislative enactment is furnished in the case of *Darweger v Staats* (267 NY 290). In that depression-era case, the Court of Appeals, by a divided court, invalidated Laws of 1933 (ch 781) which provided, among other things, that it would constitute a misdemeanor under State law for any person to violate any of the regulations adopted pursuant to the National Industrial Recovery Act (48 US Stat 195). The majority of the court in *Darweger v Staats (supra,* at 309) stated: "Surely an act which provided that any regulation of Congress hereafter made when filed with the Secretary of State would be enforceable in this State, and a violation thereof would be a misdemeanor, would be a violation of the spirit and letter of this our constitutional provision. The Codes above referred to, when once approved, are designed to have the effect of the law; they are made law by the act of Congress so far as they affect interstate commerce, and now they are proposed to be made law by incorporating them bodily into our statute by refer-

ence. It is too narrow a construction of this wise constitutional provision to say that it only applies to State laws and not to the Codes, because they are not laws in the strict sense of the word. The Codes became laws with heavy sanctions for an infraction. Their embodiment into chapter 781 of the Laws of 1933 by reference was unconstitutional". The court's holding that the law in question violated NY Constitution, article III, § 16 was influenced by its conclusion that it also constituted an unconstitutional delegation by the State Legislature of its law-making power *(Darweger v Staats, supra,* at 304-308). It was also critical to the determination in the *Darweger* case that the Federal law involved did not apply to the plaintiff, a "purely intrastate" business *(Darweger v Staats, supra,* at 301).

It may also be the case that the court's holding in the *Darweger* case *(supra)* was influenced by the sheer number, complexity and volume of the Federal laws which were incorporated by reference into the State statute. A statute which incorporates, by brief reference, an entire body of statutory and regulatory law is from a pragmatic point of view more offensive to the policies which underlie NY Constitution, article III, § 16 *(see also, Matter of Becker v Eisner,* 277 NY 143 [statute purporting to make all laws applicable to New York City Board of Education similarly applicable to Board of Higher Education held unconstitutional]; *Matter of Levine v O'Connell,* 275 App Div 217, *affd* 300 NY 658).

NY Constitution, article III, § 16 has been construed so as to allow the incorporation by reference into later statutes of procedural rules set forth in earlier statutes *(see, e.g., Richfield Oil Corp. v City of Syracuse,* 287 NY 234, 239-241; *People ex rel. Board of Commrs. v Banks,* 67 NY 568, *supra; Metropolitan Package Store Assn. v Koch,* 89 AD2d 317, 325-326). In *City of New York v State of New York* (40 NY2d 659, 664), the Court of Appeals stated that the scope of NY Constitution, article III, § 16 has been construed so as "to apply to substantive rather than procedural matters" (citing *People ex rel. Everson v Lorillard,* 135 NY 285, *supra; Knapp v Fasbender,* 1 NY2d 212). An exception to NY Constitution, article III, § 16 which permits the incorporation by reference into later laws of procedural provisions contained in earlier laws *(see, e.g., Richfield Oil Corp. v City of Syracuse, supra; People ex rel. Board of Commrs. v Banks, supra)* was also recognized in *People ex rel. Everson v Lorillard (supra,* at 290-291): "This appeal cannot be sustained without holding in effect that

every statute, general or local, must contain within itself every detail necessary to its complete execution, and that when the lawmakers desire to adopt the procedure or some other matter of detail contained in a local statute, that cannot be done by a suitable reference, but the same must be cut out of the other statute and actually inserted in the new one *mutatis mutandis*. Such a construction of this section of the fundamental law, besides producing all the mischief already pointed out, would, as was said in *People, etc., v Squire* (107 N.Y. 602), lead to innumerable repetitions of laws in the statute books, and render them not only bulky and cumbersome but confused and unintelligible, almost beyond conception. The framers of this provision could never have intended to introduce into our statute law such elements of confusion and uncertainty. Their purpose was to require bills introduced in the legislature to be presented in such form and their essential provisions expressed in such language that the effect of the proposed enactment might be understood by legislators of reasonable intelligence. To carry out this intention it is not necessary to give to the amendment a literal construction. The general object will be satisfied by giving it an interpretation more reasonable and less stringent than that contended for in support of the appeal *(Union Ferry Co.* case (98 N.Y. 158.)"

NY Constitution, article III, § 16 does not bar the incorporation by reference into statutes governing newly created agencies of prior statutes governing the jurisdiction of the agency which was replaced *(see, e.g., Burke v Kern,* 287 NY 203, 214-215; *Curtin v Barton,* 139 NY 505). Another example of the restrictive construction which has been afforded NY Constitution, article III, § 16 may be found in the case of *Matter of Tartaglia v McLaughlin* (297 NY 419), where the City of New York had enacted a local law. The Legislature passed a "curative" statute which "legalized and validated" the local law " '[n]otwithstanding any defect, irregularity or * * * lack of statutory authority' " *(Matter of Tartaglia v McLaughlin, supra,* at 424). Although the curative statute did not repeat the language of the local law which it validated, no violation of NY Constitution, article III, § 16 had occurred.

NY Constitution, article III, § 16 has no application where a Federal law is incorporated into a New York law essentially for the purpose of facilitating enforcement *(see, People v Mailman,* 182 Misc 870, *affd* 293 NY 887 [upholding constitutionality of resolution of New York State War Council which, pursuant to State War Emergency Act, incorporated all regu-

lations and orders established by Price Administrator pursuant to the Federal Price Control Act of 1942]; *cf., People v Harris Corp.,* 104 AD2d 130, 133, *affg* 123 Misc 2d 989 [incorporation of Federal regulations defining "hazardous waste" into New York regulations and New York statute defining criminal removal of hazardous waste assumed, but not decided, to be consistent with NY Const, art III, § 16]; *Conrad v Home & Auto Loan Co.,* 53 AD2d 48, 54). The generally restrictive interpretation of NY Constitution, article III, § 16 is further illustrated in those cases which uphold the various provisions of the Penal Law which incorporate by reference the terms of the statutes, such as those contained in the Public Health Law, which define narcotic drugs *(see, e.g., People v Rodger,* 28 AD2d 625, 626; *see also, People v Demers,* 42 AD2d 634; *cf., People v Darcy,* 113 Misc 2d 580, 582-583; *see also, People v Parker,* 41 NY2d 21, 27-28 [holding that New York's predicate felony statute, Penal Law § 70.06 (former [1]), did not unconstitutionally incorporate criminal statutes of other jurisdictions]; *People v Gholston,* 130 AD2d 843, 844 [upholding Penal Law § 205.25 (2), which criminalizes the promotion of prison contraband, and which incorporates administrative regulations which define the nature of contraband]).

The statute which was under review in *Mid-States Frgt. Lines v Bates* (279 App Div 451, *affd* 304 NY 700) is analogous to the statute challenged in the present case. The plaintiff challenged various provisions of Tax Law article 21 (Tax Law § 501 *et seq.),* which provided for the imposition of a highway use tax under defined conditions, but which exempted vehicles used exclusively within zones established by the Public Service Commission. The Appellate Division, Third Department, stated that the Legislature "may adopt for many legislative purposes geographic actualities which may be changed by local government or other public power without invalidating the statute which refers to the existing area" *(Mid-States Frgt. Lines v Bates,* 279 App Div 451, 460, *supra).* The Court of Appeals affirmed, rejecting an argument that the Tax Law's incorporation of geographic zones defined by the Public Service Commission violated NY Constitution, article III, § 16 *(Mid-States Frgt. Lines v Bates,* 304 NY 700, 701, *supra).*

We can see no distinction between the incorporation into the Tax Law of certain geographic zones defined by an administrative agency, and the incorporation into the ECL of certain geographic boundaries defined by the Long Island Regional

Planning Board or the Commissioner of the DEC. These geographic boundaries or the documents in which they are contained may not properly be considered "laws", and their incorporation into ECL 27-0704 is therefore not prohibited by the literal terms of NY Constitution, article III, § 16. Even if we were to interpret this provision of the NY Constitution expansively in accordance with what may be perceived to be its "spirit", our conclusion would be the same, since there is no realistic possibility that any party likely to be affected by ECL 27-0704 has been left ignorant of its scope, and since there is little chance that a revision of the 208 Plan would have consequences unforeseen, much less overlooked, by the Legislature. Neither the letter nor the spirit of NY Constitution, article III, § 16 require that ECL 27-0704 contain an actual reproduction of the 208 Plan.

## III

■ We now turn to the issues raised on the cross appeal. The Supreme Court held that ECL 27-0704 (2) is unconstitutional to the extent that it permits the Commissioner of the DEC to alter the boundaries of the deep flow recharge area. The court concluded that the conferral of this authority on the Commissioner constituted an unconstitutional delegation by the Legislature of its exclusive power to make law (NY Const, art III, § 1; *see, Boreali v Axelrod,* 71 NY2d 1, 8-14; *Matter of Levine v Whalen,* 39 NY2d 510, 515-517; *cf., Matter of Consolidated Edison Co. v Department of Envtl. Conservation,* 71 NY2d 186, 191-194). The defendants argue that, because the Commissioner has never changed the boundaries of the deep flow recharge area, and because there is no allegation, much less any evidence in the record, of his having any intent to do so in the future, any question involving the constitutionality of the Legislature's delegation to him of the power to make changes is essentially academic. We agree that no justiciable controversy is presented.

A particular question of law is academic when it appears that "the rights of the parties cannot be affected by [its] determination" *(Matter of Hearst Corp. v Clyne,* 50 NY2d 707, 714; *see also, Matter of Anonymous v New York City Health & Hosps. Corp.,* 70 NY2d 972, 974). Any determination by a court in resolving such a question would be purely advisory *(see, New York Pub. Interest Research Group v Carey,* 42 NY2d 527, 531; *see also, Cuomo v Long Is. Light. Co.,* 71 NY2d 349,

354). Accordingly, to the extent that the order and judgment declares that the Commissioner of the DEC is the beneficiary of an unconstitutional delegation of the power to expand the boundaries of the deep flow recharge area, that declaration has absolutely no effect upon the parties. The present controversy concerning the constitutionality of ECL 27-0704 arose when an application by the Town of Islip for permission to operate a solid waste management facility at a site in Edgewood was rejected by the DEC on the ground that the Edgewood site was located entirely within the deep flow recharge area. There is no indication that the plaintiffs plan to construct or operate a landfill in any area outside the boundaries of the deep flow recharge area as it is now defined. Nor is there any indication that the Commissioner of the DEC considered exercising the power which the Supreme Court enjoined him from exercising. In sum, Supreme Court did not resolve an actual dispute; rather, it ruled on a hypothetical one (see also, Board of Educ. v State of New York, 111 AD2d 505; Combustion Eng'g v Travelers Indem. Co., 75 AD2d 777, affd 53 NY2d 875).

The harm which the plaintiffs anticipate, i.e., an enlargement of the area in which construction of solid-waste landfills is strictly proscribed, may never occur. Thus, "the harm sought to be enjoined is contingent upon events which may not come to pass" (Matter of New York State Inspection, Sec. & Law Enforcement Employees, Dist. Council 82 v Cuomo, 64 NY2d 233, 240; see also, Cuomo v Long Is. Light. Co., supra; New York Pub. Interest Research Group v Carey, supra; Church of St. Paul & St. Andrew v Barwick, 67 NY2d 510, 518-519; Bachety v Kinsella, 146 AD2d 725) and there is no controversy ripe for judicial review.

■ For related reasons, the plaintiffs lack standing to argue that ECL 27-0704 (2) violates the State Constitution by virtue of its delegation to the Commissioner of the power to alter the boundaries of the deep flow recharge zone. Since there is nothing in the record which indicates that such an alteration of the boundaries of the deep flow recharge zone is contemplated by the Commissioner, it follows, a fortiori, that there is no indication of how the plaintiffs may be aggrieved if any such alteration of the zone's boundaries were undertaken.

"A party has standing to challenge the constitutionality of a statute only insofar as it has an adverse impact on his own rights. As a general rule, if there is no constitutional defect in the application of the statute to a litigant, he does not have

standing to argue that it would be unconstitutional if applied to third parties in hypothetical situations" *(Ulster County Ct. v Allen,* 442 US 140, 154-155, citing *Broadrick v Oklahoma,* 413 US 601). "Under settled standing principles, those who challenge a statute as unconstitutional must demonstrate actual or threatened injury to a protected right" *(Matter of Daniel C.,* 99 AD2d 35, 42, *affd* 63 NY2d 927, citing *Duke Power Co. v Carolina Envtl. Study Group,* 438 US 59; *People v Parker,* 41 NY2d 21; *Matter of Donohue v Cornelius,* 17 NY2d 390, 397; *People v Merolla,* 9 NY2d 62). Furthermore, "even where a litigant may suffer in-fact injury as the result of the application of a statute [the courts] have generally refused to consider the question whether a statute is unconstitutional on its face where it is constitutional as applied to the party challenging it" *(McMinn v Town of Oyster Bay,* 66 NY2d 544, 552 [Kaye, J., concurring], citing *Matter of Daniel C., supra).*

Pursuant to these principles, the plaintiffs lack standing to raise a constitutional challenge to the Commissioner's statutory power to expand the boundaries of the deep flow recharge area, because they have failed to show that their property rights or interests have been injured by the "actual or threatened" use of that power. The allegedly unconstitutional delegation of legislative power has not been shown, or even alleged, to have affected the plaintiffs in any way. Although the Supreme Court was undoubtedly correct when it observed that the enforcement of the terms of ECL 27-0704 in their entirety, "affect the [plaintiff's] ability to plan today for its future disposal needs", the fact remains that the plaintiffs have not shown that they have been directly affected in any way by the provision of the law which the Supreme Court held to be unconstitutional.

We therefore find that the Supreme Court erred insofar as it declared ECL 27-0704 (2) unconstitutional. We express no opinion on the merits of the court's holding.

### IV

■ Based upon these principles, the Supreme Court also erred in considering the plaintiffs' assertion that ECL 27-0704 (4) (a) violates NY Constitution, article III, § 1 insofar as it delegates to the Commissioner of the DEC the power to prevent the construction of new landfills, or the expansion of existing landfills in Nassau or Suffolk Counties outside of the deep flow recharge area. The Commissioner is entrusted with

the discretion to determine whether a construction or expansion of a landfill would "pose a threat to groundwater quality". ECL 27-0704 (4) (a) provides:

"On or after the effective date of this section, no person shall commence operation, including site preparation, of a new landfill or of an expansion to an existing landfill, which is located in the county of Nassau or Suffolk outside of deep flow recharge areas unless * * *

"[t]he commissioner has made an affirmative determination that such landfill will not pose a threat to groundwater quality".

The allegations in the pleadings reveal that there is only one basic factual controversy between the parties, that is, the controversy concerning the Town of Islip's application for permission to construct a landfill on the Edgewood site, which is located entirely within the deep flow recharge area. Assuming that the Commissioner's power to preclude the construction of landfills *outside* of the deep flow recharge area is the product of an unconstitutional delegation of legislative authority, the fact remains that the plaintiffs have not shown themselves to have been adversely affected, since it is neither alleged nor has it been proved that the Commissioner has exercised, or has threatened to exercise, that power.

■ So much of the Supreme Court's order and judgment as declared ECL 27-0704 (4) (a) to be constitutional should, therefore, be deleted, because there is no justiciable controversy. We recognize the lack of a justiciable controversy is argued solely by the defendants. Ordinarily, relief should be granted to an appealing party only on the basis of an argument specifically raised by it on appeal *(see,* 10 Carmody-Wait 2d, NY Prac §§ 70:422-70:423 [and cases cited therein]; *see also, Lamphear v State of New York,* 91 AD2d 791 [failure to raise argument in appellate brief tantamount to abandonment of argument]). However, where there is a defect so fundamental as the lack of a justiciable controversy, this court should examine the issue.

## V

Accordingly, the order and judgment is modified, on the law, by deleting the second and third decretal paragraphs thereof, and substituting therefor provisions dismissing so much of the plaintiffs' fifth cause of action as is based on allegations (1) that ECL 27-0704 (2) is unconstitutional insofar as it autho-

rizes the Commissioner of the DEC to adopt changes in the boundaries of the deep flow recharge area, and (2) that ECL 27-0704 (4) (a) is unconstitutional insofar as it authorizes the Commissioner of the DEC to determine whether proposed landfills outside the deep flow recharge zone pose a threat to groundwater quality, and as so modified, the order and judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements. We note that since our dismissal of a portion of the plaintiffs' fifth cause of action is based on our holding that the issues presented therein are not ripe for judicial review, and that the plaintiffs lacked standing, the plaintiffs are not precluded from reasserting such challenges should the Commissioner ever exercise, or demonstrably contemplate exercising, the powers delegated to him under those provisions (see, Board of Educ. v State of New York, 111 AD2d 505, supra).

MOLLEN, P. J., THOMPSON and KUNZEMAN, JJ., concur.

Ordered that the order and judgment is modified, on the law, by deleting the second and third decretal paragraphs thereof, and substituting therefor provisions dismissing so much of the plaintiffs' fifth cause of action as is based on allegations (1) that ECL 27-0704 (2) is unconstitutional insofar as it authorizes the Commissioner of the DEC to adopt changes in the boundaries of the deep flow recharge area, and (2) that ECL 27-0704 (4) (a) is unconstitutional insofar as it authorizes the Commissioner of the DEC to determine whether proposed landfills outside the deep flow recharge area pose a threat to groundwater quality; as so modified, the order and judgment is affirmed insofar as appealed and cross-appealed from, without costs or disbursements.